UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENNIS W. PRATT,

    Petitioner,

vs.

WARDEN ORNOSKI,

    Respondent.

No. C 05-3503 PJH (PR)

**ORDER DENYING HABEAS PETITION**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

Petitioner pled guilty in Sonoma County Superior Court to one count of second degree murder. In 1981 he was sentenced to fifteen years to life in prison. On December 3, 2004, after a hearing before the Board of Prison Terms ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole. Exh. 2 at 83.[1] The Board based its decision upon the commitment offense; the fact that the motive for the crime was very trivial in relation to the offense;

---

[1] Citations in format "Exh. __" refer to exhibits attached to the Attorney General's Answer to Petition for Writ of Habeas Corpus.

petitioner's unstable social history; an escalating pattern of criminal conduct, including misconduct while in prison; and his lack of insight into how his crime and his actions affected others. *Id.* at 83-87.

**DISCUSSION**

**I.    Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision that is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

///

2

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## II.  Issues Presented

### A.  Respondent's Contentions

Among other things, respondent contends that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions go to whether petitioner has any due process rights at all in connection with parole, and if he does, what those rights are, they will be addressed first.

#### 1.  Liberty Interest

Respondent contends that there is no clearly established Supreme Court authority holding that California law creates a liberty interest in parole. Respondent argues that although the Ninth Circuit has held that California inmates do have a liberty interest in parole, its decision is not clearly established federal law for purposes of the Antiterrorism

3

and Effective Death Penalty Act (AEDPA). *Id.*

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause. The right was created by the "expectancy of release provided in [the Nebraska parole statute.]" That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts. *Id.* at 11–12. The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987). There it held that a similar liberty interest was created even though the parole board had great discretion. *Id.* at 381. For parole decisions, this mode of analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995). *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz*, 442 U.S. at 7, a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *Allen*, 482 U.S. at 376-78 (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole). In such a case, a prisoner has a liberty interest in parole that cannot be denied without adequate procedural due process protections. *Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

///

Respondent contends that California law does not create a liberty interest in parole. But California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on parole. In California, the panel or board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). Under the clearly established framework of *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The scheme requires that parole release be granted unless the statutorily defined determination (that considerations of public safety forbid it) is made. *Id.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest). In sum, the structure of California's parole scheme – with its mandatory language and substantive predicates – gives rise to a federally protected liberty interest in parole such that an inmate has a federal right to due process in parole proceedings.

Respondent's argument as to liberty interest is without merit.

### 2.  Due Process Protections

Respondent contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled by clearly-established Supreme Court authority are limited to notice, an opportunity to be heard, and a statement of reasons for denial. That is, respondent contends there is no due process right to have the decision supported by "some evidence." This position, however, has been rejected by the Ninth Circuit, which has held that the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary

hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

**B.     Petitioner's Claims**

Petitioner contends that: (1) his due process rights were violated by the Board's denial of parole based on the circumstances of his crime; (2) the Board's decision was pro forma, arbitrary, capricious, and not supported by the evidence; and (3) use of the "some evidence" standard for denying parole violated his due process rights.

According to the transcript of the December 3, 2004, parole hearing, petitioner confirmed as true the Board's statement of the facts and circumstances of petitioner's offense. Exh. 2 at 12. Petitioner admitted to stabbing the victim – a friend of his – seventeen times during a confrontation that occurred while petitioner attempted to burglarize the victim's motor home. *Id.* at 11-12, 65-69. The Board stated that the "[crime] was clearly carried out in a way that demonstrate[d] an exceptionally callous disregard for human suffering" in light of the motive for the crime and the victim's older age in comparison to petitioner's. *Id.* at 84. The Board was also influenced by petitioner's decision to write a letter to the victim's daughter seven years prior to the hearing and seventeen years after the crime was committed. *Id.* While the contents of the letter were not evident from the transcript, the daughter's submission of a videotape expressing her fear after reading the letter contributed to the Board's determination of petitioner's "tremendous lack of insight" into his crime and actions. *Id.* at 81. Petitioner's only serious disciplinary action occurred in 1988 and while the Board recognized his positive conduct and letters of support since then, it emphasized that these gains were recent and must be demonstrated over an extended period of time. *Id.* at 85-86; Exh. 3 at 6.[2]

---

[2] At the hearing, the Board twice referred to the year of the disciplinary violation and accompanying criminal conviction as 1998. The date is accompanied by [sic] in the transcript, without explanation. Exh. 2 at 24, 85. The Board agreed that the correct date was 1988 when

6

### 1. "Biggs Claim"

In a line of relatively recent cases the Ninth Circuit has discussed the constitutionality of denying parole when the only basis for denial is the circumstances of the offense. *See Hayward v. Marshall*, 512 F.3d 536, (9th cir. 2008); *Irons v. Carey*, 505 F.3d 846, 852-54 (9th Cir. 2007); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 915-17 (9th Cir. 2003).

In *Biggs* the court said that it might violate due process if the Board were to continue to deny parole to a prisoner because of the facts of his or her offense and in the face of evidence of rehabilitation. 334 F.3d at 916-17. No legal rationale for this statement was provided, and it was unclear whether the court was suggesting that the continued denial of parole would be a new sort of due process violation or whether it was simply expressing the thought that with the passage of time the nature of the offense could cease to be "some evidence" that the prisoner would be a danger if paroled.[3] This ambiguity was helpfully cleared up in *Irons*, where the court clearly treated a "some evidence" claim as different from a "*Biggs* claim." *Irons*, 505 F.3d at 853-54. It appears, putting together the brief discussions in *Biggs* and *Irons*, that the court meant that at some point denial of parole based on long-ago and unchangeable factors, when overwhelmed with positive evidence of rehabilitation, would be fundamentally unfair and violate due process. As the dissenters from denial of rehearing en banc in *Irons* point out, in the Ninth Circuit what otherwise might be dictum is controlling authority if the issue was presented and decided, even if not strictly "necessary" to the decision. *Irons v. Carey*, 506 F.3d 951, — (9th Cir. Nov. 6, 2007) (dissent from denial of rehearing en banc) (citing and discussing *Barapind v. Enomoto*, 400 F.3d 744, 751 n. 8 (9th Cir.2005)).

---

petitioner pointed out the error. Exh. 2 at 25-26.

[3] The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).

7

Depending on whether the discussion of dictum in the dissent from denial of rehearing en banc in *Irons* is correct, it thus may be that the Ninth Circuit has recognized that due process right, which for convenience will be referred to in this opinion as a "*Biggs* claim." Here, petitioner's first issue is a "*Biggs* claim," in that he contends that simply using the circumstances of his offense as grounds for denial violates due process, separate from his "some evidence" claim, which is issue two, below.

Petitioner has failed to establish the predicate for his *Biggs* claim. First, petitioner's parole was not denied solely because of the circumstances of his offense, but also because of petitioner's lack of insight into the crime and his actions – demonstrated by the fact that he had his wife locate the victim's daughter's address in order to write her a letter – seven years prior to the hearing. Exh. 2 at 83-85. Further, the Board also relied on petitioner's unstable social history and escalating criminal conduct that continued while he was incarcerated, which it concluded outweighed any recent positive rehabilitative behavior. *Id.* at 83-88. In 1988, petitioner was subject to serious disciplinary action and a criminal conviction for attempting to smuggle drugs into the prison, and he recieved five other minor disciplinary reports since then. *Id.* at 39. And finally, assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and in the face of extensive evidence of rehabilitation, and also assuming arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief on this theory, because as there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim." The state courts' rulings therefore could not be contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

**2.     "Some Evidence" Claim**

Petitioner contends that denial of parole was not supported by "some evidence" and thus was a violation of his due process rights.

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or

8

weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

Here, the Board's decision was supported by evidence of the callous nature of petitioner's crime, Exh. 2 at 64-65; petitioner's disciplinary report and criminal conviction in 1988 for possession of a controlled substance after he attempted to smuggle methamphetamine into the prison, *id.* at 25-26; his past history with substance abuse, *id.* at 24-26; and his deliberate decision to contact the victim's daughter which indicated a lack of insight into his crime, *id.* at 59-60. The Board did not ignore petitioner's recent positive rehabilitative activities and supportive psychiatric evaluations but determined that they have not been maintained for a sufficient period of time. *Id.* at 41-59.

Because there was no constitutional violation, the state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 3. Breach of Plea Bargain

Petitioner contends that by denying him parole the Board has breached his plea bargain, because it in effect treated him as if he had been convicted of first-degree murder. The plea bargain called for a sentence of fifteen years to life, and that is what petitioner received. *See* Exh. 1. Although petitioner contends he is being punished as if he had pleaded to first-degree murder, he in fact is receiving the parole consideration that his fifteen-to-life sentence entitles him.

Also, the factual premise of this claim is false. Because first-degree murder is punishable by death, life without parole, or a term of twenty-five years to life, Cal. Penal Code § 190(a), if petitioner had been convicted of first-degree murder he would not have served the twenty-five year minimum sentence at the time of the 2004 parole hearing at

9

issue here.

This claim is without merit. The state courts' rejection of petitioner's argument was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 4. Standard of Decision

Petitioner appears to believe that the Board used the "some evidence" standard at the initial decision-making level, when its proper place is as a review standard. There is no evidence of this – the Board never said what standard it was applying -- so the claim fails.

Petitioner contends that the proper standard for the Board to apply would be "'substantive-evidence' (defined as enough to convince a reasonable person)." Pet. at 8c. His confusion here, which is perfectly understandable, is between the standard that the Board uses in the first instance and the standard that this court uses in determining whether a due process violation has occurred (it is also the standard that state law requires for appellate review of sufficiency of the evidence claims). *See Sass*, 461 F.3d at 1128-29 (federal); *In re Rosenkrantz*, 29 Cal. 4th 616, 652 (2002) (state-law standard). Because there is no clearly-established United States Supreme Court authority saying that a parole board is constitutionally required to use any particular standard in making its decision in the first instance, this claim is legally without merit, as well as factually.

The state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 29, 2008.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\PRATT3503.RUL.wpd